# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

AHAB CHOPRA, an individual,

    Plaintiff,

v.

SEETHA MONRAD, ERIN
MCKEAN, KATHRYN
SHINDELDECKER and JANE/JOHN
DOES 1-13, *in their individual and
official capacities*, JANE/JOHN
DOES 14-18, *in their official
capacities*,

    Defendants.

Case No. 25-cv-10372

Hon. Matthew F. Leitman

---

SALVATORE PRESCOTT
PORTER & PORTER, PLLC
Sarah S. Prescott (P70510)
David L. Fegley (P85275)
105 E. Main Street
Northville, MI 48167
(248) 679-8711
prescott@sppplaw.com
fegley@sppplaw.com
*Attorneys for Plaintiff*

Thomas L. Kent (P55863)
THE UNIVERSITY OF MICHIGAN
OFFICE OF THE VICE PRESIDENT
& GENERAL COUNSEL
1109 Geddes Avenue
Ruthven Building, Suite 2300
Ann Arbor, MI 48109-1079
(734) 764-0304
tomkent@umich.edu

Julie Kosovec (P50970)
BROOKS WILKINS SHARKEY
& TURCO PLLC
401 South Old Woodward, Suite 400
Birmingham, MI 48009
(248) 971-1717
kosovec@bwst-law.com
*Attorneys for Defendants*

---

## PLAINTIFF'S SUPPLEMENTAL BRIEF REGARDING FIRST AMENDMENT CLAIMS

## **TABLE OF CONTENTS**

INDEX OF AUTHORITIES..........................................................................ii

STATEMENT OF ISSUES PRESENTED..............................................................v

CONTROLLING AND MOST APPROPRIATE AUTHORITY...........................vi

INTRODUCTION ...................................................................................1

I.  Plaintiff's First Amendment claims against Defendant McKean in her
    official capacity should survive, regardless of any qualified immunity
    analysis .........................................................................................2

II. At the time that Defendant McKean imposed a prior restraint on Plaintiff's
    speech, it was clearly established law that such prior restraints were
    unconstitutional in a university setting, especially after an ostensible
    "investigation" had already been completed. ............................................3

    A. It was clearly established law that a prior restraint imposed in the
       university setting that created a legal impediment by barring Plaintiff
       from speaking to anyone with knowledge of his alleged offense was
       unconstitutional ......................................................................4

    B. It was also clearly established that an indefinite gag order was
       unconstitutional when the investigation had already concluded..........9

III. Plaintiff's Complaint plausibly alleges that Defendant McKean retaliated
     against Plaintiff for exercising his First Amendment rights ...................10

IV. Qualified immunity does not bar Plaintiff's First Amendment Retaliation
    Claim  .......................................................................................13

CONCLUSION ....................................................................................16

# INDEX OF AUTHORITIES

**Cases**                                                           **Page No(s)**

*16630 Southfield Ltd. Partnership v. Flagstar Bank, F.S.B.*,
    727 F.3d 502 (6th Cir. 2013) ......................................................................11

*Alexander v. United States*,
    509 U.S. 544 (1993)...........................................................................................5

*Anders v. Cuevas*,
    984 F.3d 1166 (6th Cir. 2021) ......................................................................2

*Bantam Books, Inc. v. Sullivan*,
    372 U.S. 58; 83 S Ct 631 (1963) ................................................................6

*Blick v. Ann Arbor Pub. Sch. Dist.*,
    674 F. Supp. 3d 400 (E.D. Mich. 2023) ..................................................10

*Blick v. Ann Arbor Pub. Sch. Dist.*,
    105 F4th 868 (6th Cir. 2024)......................................................................10

*Cnty. Sec. Agency v. Ohio Dep't of Commerce*,
    296 F.3d at 477 (6th Cir. 2002) ..................................................................5

*Edmonson v. Leesville Concrete Co.*,
    500 U.S. 614, 111 S.Ct. 2077 (1991) .........................................................6

*Farhat v. Jopke*,
    370 F.3d 580 (6th Cir. 2004) .......................................................................9

*Fritz v. Charter Twp. of Comstock*,
    592 F.3d 718 (6th Cir. 2010) ......................................................................11

*Hill v. Lappin*,
    630 F.3d 468 (6th Cir. 2010) ......................................................................13

*Kesterson v. Kent State University*,
    967 F.3d 519 (6th Cir. 2020) .......................................................................7

*MacIntosh v. Clous*,
    69 F.4th 309 (6th Cir. 2023) ................................................................ 2, 13-15

*McGlone v. Bell*,
    681 F.3d 718 (6th Cir. 2012) ....................................................................... 4-5

*Microsoft Corp. v. United States DOJ*,
    233 F. Supp. 3d 887 (W.D. Wash. 2017) .....................................................10

*Novak v. City of Parma*,
    932 F.3d 421 (6th Cir. 2019) ...........................................................................6

*Pickering v. Bd. of Educ.*,
    391 U.S. 563 (1968)...........................................................................................9

*Rudd v. City of Norton Shores*,
    977 F.3d 503 (6th Cir. 2020) ..........................................................................14

*Satkowiak v. Marshall*,
    771 F. Supp. 3d 937 (E.D. Mich. 2025) ..........................................................2

*Turner v. Williams*,
    65 F.4th 564 (11th Cir. 2023) ........................................................................14

*United Pet Supply, Inc. v. City of Chattanooga, Tenn.*,
    768 F.3d 464, 472, 484 (6th Cir. 2014) ...........................................................2

*Wells v. Rice*,
    692 F. Supp. 3d 735 (E.D. Ky. 2023)............................................................14

*Wesley v. Campbell*,
    779 F.3d 421 (6th Cir. 2015) ...........................................................................2

*Whitney v. City of Milan*,
    677 F.3d 292 (6th Cir. 2012) ....................................................................... 6-7

*Wolfel v. Morris*,
    972 F.2d 712 (6th Cir. 1992) ...........................................................................3

*Zilich v. Longo*,
    34 F.3d 359 (6th Cir. 1994) ......................................................................13, 15

## Rules

Fed. R. Civ. P. 12(b)(6).................................................................................2, 11, 12

## <u>STATEMENT OF ISSUES PRESENTED</u>

1. Should Plaintiff's First Amendment Prior Restraint claim against Defendant McKean be dismissed on qualified immunity grounds, notwithstanding clearly established law regarding the unconstitutionality of indefinite gag orders and the fact that Defendant McKean was sued in both her individual and official capacities?

   **Plaintiff answers:** No


1. Should Plaintiff's First Amendment Retaliation claim against Defendant McKean be dismissed, notwithstanding the plausible allegations raised in the Complaint, the clearly established law regarding the unconstitutionality of threats of police action or law enforcement to deter the exercise of First Amendment rights, and the fact that Defendant McKean was sued in both her individual and official capacities?

   **Plaintiff answers:** No

## <u>CONTROLLING AND MOST APPROPRIATE AUTHORITY</u>

*MacIntosh v. Clous*, 69 F.4th 309 (6th Cir. 2023)

*McGlone v. Bell*, 681 F.3d 718 (6th Cir. 2012)

*Rudd v. City of Norton Shores,* 977 F.3d 503 (6th Cir. 2020)

*Whitney v. City of Milan*, 677 F.3d 292 (6th Cir. 2012)

## **INTRODUCTION**

In his Third Amended Complaint, Plaintiff Ahab Chopra alleged that Defendants—agents of the University of Michigan—violated his constitutional rights in myriad ways, when they acted in concert to functionally expel him from the University's medical school without affording him due process and punished him more harshly from similarly situated comparators in violation of the Equal Protection Clause. Plaintiff also alleged two counts of First Amendment violations. Count IV of the Complaint alleged the imposition of a prior restraint on Plaintiff's First Amendment rights when he was barred from speaking with any witnesses who may have had knowledge of the underlying circumstances of his alleged misconduct. Count V of the Complaint alleged First Amendment retaliation, when Defendants sicced local police on Defendant to threaten and deter him from communicating with one such witness.

In a January 26, 2026 motion hearing, later memorialized in an Order issued the same day (ECF No. 34), this Court requested supplemental briefing on two distinct issues: First, with respect to Count IV, the Court requested that Plaintiff "explain[] why the [Count IV] claims should not be dismissed on qualified immunity grounds as to Defendant McKean." (ECF No. 34, PageID.820-821). Second, with respect to Count V, the Court requested that Plaintiff explain "why this claim was

plausibly alleged against Defendant McKean and why the claim should not be dismissed on qualified immunity grounds." *Id.*

## I.   Plaintiff's First Amendment claims against Defendant McKean in her official capacity should survive, regardless of any qualified immunity analysis

As a threshold matter, it bears emphasis that Plaintiff's Complaint alleges First Amendment violations against Defendant Erin McKean in both her individual and official capacities. The Court may dismiss individual capacity claims against Dean McKean if it finds that her alleged conduct did not plausibly allege that she violated clearly established law.[1] For reasons described below, Plaintiff urges this Court not to do so.

However, the official capacity claims against Dean McKean, for which Plaintiff seeks declaratory and injunctive, prospective relief, including reinstatement and expungement of disciplinary records, cannot be dismissed on qualified immunity grounds. *United Pet Supply, Inc. v. City of Chattanooga, Tenn.*, 768 F.3d 464, 472, 484 (6th Cir. 2014) ("[Q]ualified immunity is not an available defense to

---

[1] Sixth Circuit precedent recognizes that while the plaintiff bears the burden of showing that a defendant is not entitled to qualified immunity, "that burden is not high at the 12(b)(6) stage[.]" *MacIntosh v. Clous*, 69 F.4th 309, 315 (6th Cir. 2023). "[I]t is generally inappropriate ... to grant a 12(b)(6) motion to dismiss on the basis of qualified immunity." *Anders v. Cuevas*, 984 F.3d 1166, 1175 (6th Cir. 2021) (quoting *Wesley v. Campbell*, 779 F.3d 421, 433 (6th Cir. 2015)); *Satkowiak v. Marshall*, 771 F. Supp. 3d 937, 947 (E.D. Mich. 2025) (declining to "assess Defendants' entitlement to qualified immunity before the Parties engage in factual discovery").

an official-capacity suit" and is "available only to individual government officials sued in their personal capacity"); *Wolfel v. Morris*, 972 F.2d 712, 719 (6th Cir. 1992) (expunging disciplinary records constitutes prospective relief). Put another way: Regardless of the Court's conclusion regarding the qualified immunity analysis, the official capacity claims against Defendant McKean—which are functionally claims against the state, itself—should survive.

**II.    At the time that Defendant McKean imposed a prior restraint on Plaintiff's speech, it was clearly established law that such prior restraints were unconstitutional in a university setting, especially after an ostensible "investigation" had already been completed.**

Plaintiff's Complaint alleges that on June 28, 2024, in the same phone call where he first learned about the allegation of misconduct against him, "Defendant McKean told Plaintiff that he was prohibited from speaking with anyone who had or may have had information regarding the facts surrounding his alleged privacy violation." (ECF No. 21, PageID.448, ¶312). Dean McKean's edict was "unlimited in scope and vague in its phrasing, barring Plaintiff from speaking with not just Ms. Gruley but anyone and everyone who 'may' have been involved." (ECF No. 21, PageID.449, ¶315). Following the phone call, Plaintiff reached out via email to Dean McKean to inquire if she would grant him a narrow exception to this gag order by allowing him "to apologize to the person" whose privacy he thought he was accused of violating. (ECF No. 21, PageID.400, ¶82). The response was blunt, with Dean

McKean writing: "Do NOT do this. Do not reach out to the person, do not discuss with the person you think this may be." (ECF No. 21, PageID.401, ¶84).

The prior restraint was also not made in furtherance of protecting the integrity of any investigation into alleged misconduct. Indeed, the "investigation" was already over: That very same day, Plaintiff received an email stating that the Michigan Medicine Compliance Office had "**suspended** [his] **access to MiChart permanently**." (emphasis in original) (ECF No. 21, PageID.401, ¶86). The threshold Level 4 determination from the Compliance Office was set in stone and unappealable. (ECF No. 21, PageID.410, ¶108). Defendants told Plaintiff that they had no choice and no discretion whatsoever but to facilitate his removal from the medical school. *Id.* at ¶109.

> **A. It was clearly established law that a prior restraint imposed in the university setting that created a legal impediment by barring Plaintiff from speaking to anyone with knowledge of his alleged offense was unconstitutional**

At the time that Defendant McKean issued her prior restraint, there was clearly established Sixth Circuit case law making clear that such prior restraints were impermissible, even in an academic university setting.

In *McGlone v. Bell*, 681 F.3d 718 (6th Cir. 2012), an evangelical Christian who sought to speak to students on campus regarding his religious beliefs challenged a University policy requiring external speakers to submit a written application 14

days prior to making any such speech. The policy required the speaker to identify their purpose, state whether literature would be distributed, and state whether the speaker's message was political or religious. *Id*. at 726. The Court laid out the contours of prior restraint jurisprudence, explaining that such restraints "forbid[] certain communications when issued in advance of the time that such communications are to occur." *Id*. at 733 (quoting *Alexander v. United States*, 509 U.S. 544, 550 (1993)) and noting that such a restraint bears a "heavy presumption against its constitutional validity." *Id*. (quoting *Cnty. Sec. Agency v. Ohio Dep't of Commerce*, 296 F.3d at 477, 485 (6th Cir. 2002)). To survive constitutional scrutiny, the prior restraint "must be content-neutral, narrowly tailored to serve a significant governmental interest, and leave open alternatives for communication." *Id.* The Court held that the campus policy violated the First Amendment and constituted an impermissible prior restraint that was not narrowly tailored to any legitimate interest. *Id*.

Here, like in *McGlone*, a University-issued edict forbade certain communications (indeed, all communications) prior to the time that such communications were to occur. Although the nature of the prior restraint was less formal than an officially promulgated University policy, the Sixth Circuit has explained that while the formality of, say, a temporary restraining order or

permanent injunction may be a sufficient condition for a prior restraint, it is not a

necessary one:

> A government official should not have to declare his order official or
> jump through certain procedural hoops to create a prior restraint. Such
> a rule would allow government officials to cloak unconstitutional
> restraints on speech under the cover of informality. To borrow a
> concept, when an officer "carr[ies] a badge of authority of the
> government and represent[s] it in some capacity," *Edmonson v.
> Leesville Concrete Co.*, 500 U.S. 614, 632, 111 S.Ct. 2077, 114 L.Ed.2d
> 660 (1991) (O'Connor, J., dissenting), his order to a private party to
> take a specific action may fairly be called an "administrative order."
> This is true even if the order is not on its terms binding. *Bantam Books,
> Inc. v. Sullivan*, 372 U.S. 58, 70, 83 S.Ct. 631, 9 L.Ed.2d 584 (1963)
> (recognizing "a system of prior administrative restraints" even where
> affected parties were free to ignore the notices).

*Novak v. City of Parma*, 932 F.3d 421, 433 (6th Cir. 2019). Another 2019 Sixth

Circuit case, *Whitney v. City of Milan*, 677 F.3d 292, 295 (6th Cir. 2012), is

instructive regarding both the informality/formality divide and the clearly

established principle that indefinite gag orders constitute illegal prior restraints.

There, the plaintiff was a municipal employee whose supervisor was fired. The

mayor then summoned the plaintiff to his office and ordered her to end all contact

with the terminated employee and expressly instructed her not to "promote" any

allegations that the fired employee may raise against the city or assist in any lawsuits.

*Id*. at 295. The Sixth Circuit described this as an "indefinite gag order" and affirmed

the district court, which had rejected defendants' qualified immunity defense. *Id*. at

298-299.

6

Like in the present case, the prior restraint in *Whitney* came in the form of a verbal warning, but that lack of formality did not doom the cause of action. Instead, the Sixth Circuit recognized—as this Court should here—that the context surrounding such a verbal "indefinite gag order" matters: A legal impediment can emerge from the lips of an authority figure (rather than the pen of a legislature or court), particularly when the speaker is vested with the state's authority to punish. Ms. Whitney feared that speaking with her former supervisor would threaten her job security. Mr. Chopra feared that denying Dean McKean's order would jeopardize his medical school education.

Defendants' brief in support of summary judgment points to *Kesterson v. Kent State University*, 967 F.3d 519 (6th Cir. 2020) for the proposition that Plaintiff's First Amendment claims must fail. In *Kesterson*, the court defined a prior restraint as an "administrative" or "judicial order" that forbids speech in advance, and "[t]he alleged restraint must impose a legal impediment." *Id*. at 526. In *Kesterson*, a college softball coach's alleged statement to a student athlete instructing her not to tell anyone about an assault did not constitute prior restraint. The conversation in question allegedly took place during an end-of-season interview between player and coach. When the player, Kesterson, told her coach that another student had raped her, the coach allegedly responded by telling her to keep such information between the people who already knew about it and not to tell others. *Id.* at 524. This, the Court

held, did not rise to the level of an administrative or judicial order, insofar as it failed to impose a "legal impediment." *Id*.

In contrast, in the present case, Dean McKean telling Plaintiff not to speak of the situation to *anyone* arrived in a very different context. It was not a conversation between player and coach with the latter providing (inappropriate) advice to the former; it was a warning from an administrator at the University issuing what was presented as an officially promulgated policy of the University. (ECF No. 21, PageID.449). The consequences for violating Dean McKean's order, which came in the immediate wake of Dean McKean sharing the news that Plaintiff was facing disciplinary action, was the implied sanction of expulsion. It placed Plaintiff in a bind: Plaintiff could not disregard the command without a reasonable fear that doing so would jeopardize his ability to remain at the University, but not speaking with witnesses prevented him from mounting a defense to the accusations against him.

Even if this Court finds that Dean McKean had a legitimate interest in barring Plaintiff from speaking with Ms. Gruley (the complainant), there is no such legitimate interest for the broader sweep of Dean McKean's indefinite gag order, which barred Plaintiff from communicating with *anyone* who he believed was involved with or had knowledge of the allegations made against him.

8

## B. It was also clearly established that an indefinite gag order was unconstitutional when the investigation had already concluded

The Sixth Circuit has recognized that *some* investigation-related speech restrictions may be constitutionally permissible under specific circumstances. In *Farhat v. Jopke,* 370 F.3d 580 (6th Cir. 2004), for instance, the court upheld a 15-day restriction on an employee's communication with coworkers during a workplace investigation concerning allegations of the plaintiff's explosive and rude behavior. The court applied the balancing test outlined in *Pickering v. Bd. of Educ.*, 391 U.S. 563 (1968), weighing the employee's speech interests against the employer's operational needs. It considered the limited duration, narrow scope (restricting only communications with coworkers while allowing speech to the public and union representatives), the legitimate purpose of preventing further workplace disruption and investigation interference, and the employee's documented history of confrontational and disruptive behavior. The court noted that the appellant had failed to present any evidence of how he was limited by the alleged restraint and found it to be "reasonable *in light of the employer's interest in completing its investigation* and in protecting the workplace." *Id*. at 598 (emphasis added).

But of course *Farhat*'s reasoning fails to apply when an investigation has already concluded, as is the case here. The *Farhat* court specifically emphasized the employer's interest in "completing its investigation" as a key justification for the restriction, meaning that post-investigation restrictions like the one in the present

case would face heightened constitutional scrutiny since the primary governmental justification—protecting investigation integrity—no longer exists. *See Blick v. Ann Arbor Pub. Sch. Dist.,* 674 F. Supp. 3d 400, 428 (E.D. Mich. 2023), aff'd, 105 F.4th 868 (6th Cir. 2024) (finding that restrictions directing a school principal not to contact students, parents, or staff regarding an investigation into her potential misconduct was not an improper prior restraint because like in *Farhart* "the reason for the restriction here was to keep Plaintiff from interfering with [the] investigation"). This reasoning explicitly ties the constitutional justification to the ongoing nature of the investigation. The constitutional calculus changes significantly post-investigation because the compelling governmental interests that can overcome the heavy presumption against prior restraints are no longer present. *See, e.g., Microsoft Corp. v. United States DOJ*, 233 F. Supp. 3d 887, 900 (W.D. Wash. 2017) (noting that in some instances, the government's interest in keeping its investigations secret "dissipates after an investigation concludes and at that point, First Amendment rights may outweigh the Government interest in secrecy").

## III.  Plaintiff's Complaint plausibly alleges that Defendant McKean retaliated against Plaintiff for exercising his First Amendment rights

Plaintiff's Complaint alleges that after sending a single email to Erin Gruley, the University of Michigan Police Department contacted Plaintiff and threatened him with criminal prosecution if he attempted to contact her again. (ECF No. 21, PageID.453-454, ¶¶342-345). Plaintiff explicitly attributes responsibility for the

adverse police action to Defendant McKean for "direct[ing] this contact and the police action against Plaintiff." *Id*. What's more, the Complaint alleges that Plaintiff's subsequent expulsion was motivated "in part by Plaintiff's sole instance of protected conduct of reaching out to this potential witness politely, once, by email." (ECF No. 21, PageID.455, ¶351).

The Sixth Circuit applies established *Twombly/Iqbal* plausibility standards to allegations made upon information and belief under Rule 12(b)(6) motions to dismiss. Such allegations can satisfy plausibility requirements when they are based on sufficient factual information and are not merely conclusory assertions. *16630 Southfield Ltd. Partnership v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 504 (6th Cir. 2013). To be sure, allegations that constitute "naked assertions devoid of further factual enhancement" fail the plausibility test regardless of the information and belief qualifier. *Id*. at 506. But the factual allegations in a complaint need only to be merely plausible, "i.e., more than merely possible." *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010).

Here, Plaintiff's Complaint plausibly alleges that Dean McKean instructed Plaintiff not to communicate with Erin Gruley or anyone else with knowledge of the underlying facts related to the allegation against him. When Plaintiff nonetheless contacted Ms. Gruley several weeks later in a single, polite email, police contacted

Plaintiff in an effort to muzzle him and deter future communications.   Plaintiff alleges that Dean McKean directed this police contact.

Defendant McKean may take umbrage at this allegation, but the discovery process provides her an opportunity to refute any allegations regarding her involvement with the police contact or motivation for forcing Plaintiff to be dismissed from medical school. Should discovery make clear that, contrary to Plaintiff's allegations, Defendant McKean played no role in directing or ratifying the retaliatory police conduct or that Plaintiff's act of contacting a witness did not motivate her action in expelling Plaintiff, she may file a motion for summary judgment on that basis, at that time. But this is a 12(b)(6) motion based on the pleadings. And at this early stage, the allegations are well-plead and should survive a motion to dismiss.

Plaintiff relies on information and belief. His allegations are plausible. Dean McKean was, undoubtedly, a central player in Plaintiff's expulsion. And she is the Defendant with the closest connection to Plaintiff and Gruley, given that she was the first to inform Plaintiff that he was in disciplinary trouble and that she is the one who expressly forbade him, in writing, from contacting Ms. Gruley. The Complaint alleges the order, and the subsequent adverse action, was not narrowly tailored to serve any significant interest, nor based on actual witness concerns, factual threat, or any ongoing investigation. (ECF No. 21, PageID.455, ¶¶352-355). The Complaint

establishes not only a plausible inference of Dean McKean's involvement, but a specific chain of events where her orders, participation, and/or ratification were a but-for cause of the alleged retaliation.

## IV.   Qualified immunity does not bar Plaintiff's First Amendment Retaliation Claim

It is clearly established that using the instrumentalities of law enforcement to intimidate an individual and deter them from exercising their free speech rights constitutes unconstitutional retaliation under the First Amendment. The Sixth Circuit has held that "threats alone can constitute an adverse action if the threat is capable of deterring a person of ordinary firmness from engaging in protected conduct." *Hill v. Lappin*, 630 F.3d 468, 474 (6th Cir. 2010).

In *MacIntosh v. Clous*, 69 F.4th 309 (6th Cir. 2023), the Sixth Circuit addressed a county commissioner who displayed a high-powered rifle during a public meeting in response to a citizen's protected speech criticizing political violence. The court held that "no reasonable official could believe that it was permissible to brandish a deadly weapon in response to MacIntosh's public comment asking the official to condemn violence" and denied qualified immunity because "it was clearly established that Clous's conduct violated MacIntosh's First Amendment rights." *Id*. at 321. The *MacIntosh* court relied on the foundational Sixth Circuit precedent *Zilich v. Longo*, 34 F.3d 359 (6th Cir. 1994), which established that threats

13

of harm in response to protected speech constitute First Amendment retaliation beyond the scope of qualified immunity protection. The court in *MacIntosh* explained that "when an official responds to speech with threats of physical harm, that response constitutes an adverse action that would deter a person of ordinary firmness from speaking." *Id*. at 316.

In *Rudd v. City of Norton Shores*, the plaintiff alleged that after he filed an official complaint with the police department, the city attorney sent him a letter threatening legal action if he did not stop criticizing the department. 977 F.3d 503, 510 (6th Cir. 2020). The Sixth Circuit found that he had plausibly alleged a First Amendment retaliation claim, noting that when measured against case law showing what kinds of actions were sufficiently adverse under the First Amendment, Rudd's complaint sufficiently alleged a threat that would deter an ordinary person from speaking out. *Id.* at 514-515 (6th Cir. 2020); *Wells v. Rice*, 692 F. Supp. 3d 735, 741, 748 (E.D. Ky. 2023) (agreeing with Plaintiffs' argument that Defendant was "not entitled to qualified immunity because it is clearly established that police may not threaten people for their protected political speech"); *Turner v. Williams*, 65 F.4th 564, 580 (11th Cir. 2023) ("[T]hreat of arrest is the quintessential retaliatory conduct that would deter a person of ordinary firmness from exercising First Amendment rights").

Here, Defendant McKean, by directing police to intimidate Plaintiff and deter future communications with witnesses like Ms. Gruley, likewise retaliated against Plaintiff in violation of the First Amendment. The Complaint alleges that the core right—to be free from retaliatory action for protected expression, especially in preparing a legal defense—was clearly established. No reasonable official could have believed it constitutional to participate in police threats of criminal prosecution in response to a single, polite, non-threatening email sent for the purpose of gathering a witness statement.

When a university administrator directs or collaborates with local police to make threatening phone calls in retaliation for First Amendment activity, clearly established legal principles converge to defeat qualified immunity. While *MacIntosh* involved direct retaliation by a county commissioner rather than coordinated action between different government entities, the principle that threatening communications in response to protected speech violates clearly established law applies. The threat of criminal prosecution, itself, violates the clearly established prohibition against retaliating through intimidation tactics established in cases like *MacIntosh* and *Zilich*.

15

## **CONCLUSION**

For the reasons set forth above, Plaintiff urges this Court to deny Defendants' motion to dismiss with regard to Plaintiff's First Amendment claims (Count IV and Count V) against Defendant Erin McKean.


Respectfully Submitted,

/s/ Sarah S. Prescott
Sarah S. Prescott (P70510)
David L. Fegley (P85275)
SALVATORE PRESCOTT PORTER & PORTER
105 E. Main Street
Northville, MI 48167
248-679-8711
prescott@sppplaw.com
fegley@sppplaw.com

Dated: February 9, 2026

## **CERTIFICATE OF SERVICE (EFILE)**

I hereby certify that on February 9, 2026 I electronically filed the foregoing document together with this Certificate of Service with the Clerk of the Court, through the Court's ECF system, which will provide electronic copies to counsel of record.


Dated: February 9, 2026                 /s/ Kelly Murawski

Kelly Murawski, Paralegal